UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File No. 14-389 (MJD/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **SENTENCING POSITION OF** |
| Plaintiff, ) | **THE UNITED STATES** |
| ) | |
| v. ) | |
| ) | |
| MOHAMED ALI OMAR, ) | |
| ) | |
| Defendant. ) | |

The United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorney John Docherty, respectfully submits its sentencing position in this case. The Court has also directed the parties to brief the applicability of *Elonis v. United States*, ___ U.S. ___, No.13-983 (June 1, 2015) to this case. The response of the United States, to be set forth in detail in a separate pleading to be filed later today, will be that *Elonis* has no applicability to this case.

On March 13, 2015 defendant Mohamed Ali Omar was convicted following a jury trial of a single count of threatening federal officers and a person assisting federal officers in the performance of their duties, in violation of Title 18, United States Code, Section 115. The properly calculated advisory guidelines sentence is 30 to 37 months' imprisonment. The Report of Presentence Investigation has calculated the advisory guidelines sentence as four to ten months' imprisonment, but did so by discounting

evidence that the defendant intended to carry out his threat of harm to federal officers, a fact that adds six levels to the defendant's guidelines base offense level. However, the United States will not seek a guidelines sentence in this case, as it believes a sentence of between 12 and 18 months' imprisonment is sufficient, but no longer than necessary, to achieve the goals of sentencing that are set forth at Title 18, United States Code, Section 3553(a).

## FACTS

On November 6, 2014, defendant's brother, Guled Ali Omar ("Guled"), went to Minneapolis – Saint Paul International Airport ("MSP") to try to catch a flight to San Diego. He checked in using his United States passport, and checked no luggage. Concerned that Guled was on his way to Syria to join, and fight with, the designated foreign terrorist organization Islamic State in Iraq and the Levant ("ISIL"), federal authorities at MSP declined to allow Guled to board his flight to San Diego. Guled then left the airport.

FBI Special Agent Jeff Moniz, and Special Agent Corinne Tullos, a federal law enforcement officer with the Department of Defense who is assigned to the Joint Terrorism Task Force of the FBI's Minneapolis Division, went to Guled's residence, 3536 Columbus Avenue South, Minneapolis, to attempt to interview Guled's family. In the past, federal law enforcement has found that the families of young men who try to travel overseas to join terrorist organizations are frequently unaware that their loved one has obtained a passport, bought a ticket, packed their bags, and gone to the airport to travel overseas. Family interviews, such as the one Agents Moniz and Tullos were on

their way to conduct on November 6, 2014, are part of doing a thorough investigative job in a traveler or attempted traveler case. Both Special Agent Moniz and Special Agent Tullos had been to 3536 Columbus Avenue South in the past, for the same reason. During those earlier family interviews, the agents had been invited into the home, and had taken part in polite conversations with Guled's family.

Because neither Special Agent Moniz nor Special Agent Tullos can communicate in Somali, and because they were aware from their previous visits that Guled's mother has a limited command of English, the agents were accompanied on November 6, 2014 by Abdirahman Aweis, a Somali-English interpreter who was working under contract for the FBI. Mr. Aweis was not a law enforcement officer, but without him Agents Tullos and Moniz would not have been able to perform their official duties.

The evidence at trial showed that upon arrival at 3536 Columbus Avenue South, Special Agent Moniz, Special Agent Tullos, and Mr. Aweis got out of their car and walked towards the front door of the residence. The door was answered by the defendant. The defendant's sister was also present. A verbal confrontation with the agents and the interpreter ensued, which culminated with the defendant angrily saying, on three occasions, "I'll knock your shit in," and on one occasion "fuck you, something is going to happen to you, don't come back to my property no more." Both Special Agent Moniz and Special Agent Tullos testified that they took these threats to be directed at all three FBI personnel. The defendant, who testified in his own defense, stated that he was directing his ire exclusively at Mr. Aweis, who he believed had called his sister a word

that in Somali means "garbage," but with an added connotation in Somali of sexual promiscuity.

The agents testified they were apprehensive that the confrontation seemed to be rapidly degenerating. They also testified that the possibility of the situation becoming physically violent was on their minds, as was the fact that they, as law enforcement officers, were responsible for the safety of Mr. Aweis, a civilian. They testified that in the end they judged that the only way to de-escalate the confrontation was to depart. The agents' departure meant they did not conduct the interviews they had come to the residence to conduct. As the agents and the interpreter left, the defendant called out to them words to the effect of "you know my history," "I have a permit to carry," and that if they came back to the house again, the defendant would "get" them.

The following day, Friday, November 7, 2014, based on the defendant's threats and also on his criminal history of firearms arrests, the United States Attorney's Office presented to a Magistrate Judge of this Court for her consideration a criminal complaint charging the defendant with violating 18 U.S.C. § 115, an arrest warrant for the defendant, and a search warrant for 3536 Columbus Avenue South. The Magistrate Judge signed the criminal complaint and also authorized both a no-knock warrant to search 3536 Columbus Avenue South for firearms and firearms accessories, and a warrant for the arrest of the defendant.

In the warranted search of the residence, FBI Agents found two empty Glock pistol boxes, an approximately half-full box of ammunition, a holster, and a replica firearm. On Monday, November 10, 2014, when two FBI Agents were transporting the

defendant to court for his initial appearance, an agent (after giving the defendant a *Miranda* warning) asked the defendant where the pistols that had formerly been in the empty Glock boxes were now. The defendant acknowledged that the pistols in the boxes had been his, but said he was "not comfortable" telling the agents the present whereabouts of the pistols. The location of these weapons remains unknown to law enforcement.

The defendant was indicted on the same charge as had been in the complaint, threatening federal officers and a person assisting federal officers, in violation of 18 U.S.C. § 115. A jury trial commenced on March 10. The jury returned its verdict finding the defendant guilty of the sole count of the indictment on March 13. The defendant has been detained in custody since the date of his arrest, November 7, 2014.

**I.  A SENTENCE OF 12 TO 18 MONTHS IS SUFFICIENT, BUT NO LONGER THAN NECESSARY, TO ACHIEVE THE GOALS OF SENTENCING SET OUT AT 18 U.S.C. § 3553(a).**

**A. The Advisory Guidelines Sentence is 30 to 37 Months' Imprisonment.**

The crime of conviction in this case, 18 U.S.C. § 115, can cover an unusually broad range of criminal activity, from an anonymous internet threat to an extremely serious, face-to-face threat in which a dangerous weapon is brandished. While the appropriate sentencing guideline in this case is USSG § 2A6.1, the Sentencing Commission has noted, in connection with that guideline, that "it is not possible to include all of the potentially relevant circumstances in the offense level." Accordingly,

after first calculating an appropriate guideline sentence, the government then gives the reasons it will advocate for a sentence of 12 to 18 months.

While 18 U.S.C. § 115 is keyed to different guidelines, most of them contemplate a completed assault. The guideline that is most appropriate in a case such as this one, in which a threat was communicated but no assault was carried out, is USSG § 2A6.1, "Threatening or Harrassing Communications, Hoaxes, Stalking, and Domestic Violence." The base offense level is 12, but that is increased by six levels if the offense involved "any conduct evidencing an intent to carry out such threat." The PSR declined to add these six levels. The PSR discusses both the threat to physically assault the federal personnel, and also assesses the evidence bearing on the question of whether the defendant intended to *shoot* the agents and the interpreter.[1] The government disagrees that the evidence does not support a present intention on the defendant's part to use a firearm and carry through on his threat to shoot. But even if the evidence is not sufficient to add six levels to the base offense level because of the firearm threat, there is still the fact that the defendant's threat to "knock your shit in" was accompanied by a present intention to carry it through. The cellphone videotape introduced into evidence at trial shows a heated confrontation, taking place at close physical quarters; the defendant's conduct and attitude are belligerent, hostile, and threatening; and as noted above, the

---

[1] There is also a four level reduction in offense level called for by USSG § 2A6.1 if neither a present intent to carry out the threat, nor any of five other enumerated reasons for increasing the offense level, are found applicable. The PSR applies this reduction, which is the reason the offense level found in the PSR winds up being 8, rather than 12 (the base offense level).

agents came to the conclusion that departing the scene was the only sure way to prevent the confrontation from becoming physical.

The base offense level should therefore be calculated as 12 + 6 = 18. There are no applicable reductions. The defendant is in criminal history category II. The advisory guidelines term of imprisonment is 30 to 37 months.

### B. The 18 U.S.C. § 3553(a) Factors.

A guidelines sentence of 30 to 37 months would be amply justified in this case, given that the defendant made multiple threats, that he made threats to use a firearm, that he had the present intention and capability to carry out the threats he made, and that his history of firearms offenses and recent possession of two Glock pistols made his threats alarmingly credible. But while a within-guidelines sentence would be justifiable, it would also be longer than necessary.

The objectives of criminal sentencing are well known. They are listed at 18 U.S.C. § 3553(a). The government takes them up in turn.

The "nature and circumstances of the offense and the history and characteristics of the defendant" are seriously concerning. Defendant made multiple threats to two federal law enforcement agents and the interpreter assisting them. The defendant conceded on cross-examination at trial that at least by the time he made the last of these threats he had realized that he was talking to federal law enforcement agents. Even though the defendant is still quite young, he already has a criminal record of firearms-related arrests, and the Hennepin County Sheriff's Office was correct to deny the defendant's application for a permit to carry on the grounds that his history showed him to be a threat to public

safety. In addition, there is a need for general deterrence in this case, as federal law enforcement officers generally, and those investigating national security offenses specifically, must be able to do their work without attempts being made to intimidate them.

However, the government also recognizes that there were no firearms in the house (more precisely, there were no firearms in the house on the evening of the day following this incident, when the search warrant was conducted); the defendant has not been confrontational with law enforcement before; and the episode, while very serious, appears to have been an incident of transitory anger.

This is a serious offense. A period of incarceration is called for. The guidelines sentence, though, as the Sentencing Commission itself recognized, is general and cannot cover all the factors relevant to fashioning an appropriate sentence.

The government therefore respectfully requests that the defendant be incarcerated for not less than 12 nor more than 18 months. The Court may achieve that by departing upwards from the guidelines calculations in the PSR, or downwards from the guidelines calculation of the government.

The government leaves all other terms and conditions of the sentence to the sound discretion and experience of the Court.

Dated: June 8, 2015                                  Respectfully Submitted,

                                                    ANDREW M. LUGER
                                                    United States Attorney

                                                    s/ John Docherty

                                                    BY:   JOHN DOCHERTY
                                                    Assistant United States Attorney